Our next case is Rady v. Boston Consulting Group, Inc., 52-3212. Counsel Tiller, you have reserved four minutes of time for rebuttal. I have, Your Honor. Okay, you may proceed. Thank you, Your Honor. May it please the Court. Counsel, my name is Steve Tiller. I am here representing the appellant, Max Rady. The lower court, the Southern District of New York, held that the invention claimed in the 250 patent is directed at the abstract ideas of collecting, analyzing, and storing data. It is far more than that. This characterization of the invention is an overgeneralization that is completely untethered from the patent claims. Just to get everything going here, because we are all familiar with the background, what is the unique signature? It is a combination of a lot of information. As Claim 2 points out specifically, but it is also in Claim 1, Your Honor, there are analysis components, LIDAR, spectral imagers, HD cameras, scales, mechanisms of movement. There is all of these components, and I am going to use diamonds as the example since De Beers. All of those components and everything is used to this method that you claim to go to arriving and resulting in the unique signature. Correct. What is that? Think of it as a map, essentially, a 3D map showing all the anomalies and flaws and color changes and everything, all of the differences, and again I am going to use diamonds, but a lot of different objects, watches, drawings, paintings, things of that nature, but since De Beers... How much can it work for a shoe? Does a shoe have a unique signature? I do not know about a shoe, Your Honor. I think it probably does, because there are always, even when, so let me change the example for half a second. I would think that it does have one, because it seems to me that the unique signature is a digital image that has got various components, and this is a digital image that is composed, the composition of which are different types of data, like the spectral imaging, it has that, it has got the 3D image. So am I correct that the unique signature is this sophisticated digital image of this object? Yes. Yes, Your Honor. It is looking at the object in a number of different ways, essentially a 360 view, 3D view, and it is analyzing all of the different flaws, anomalies, color changes, and creating... Okay, so then we have, at the end of the process, we have this digital image, a sophisticated digital image. What happens next is comparing that to another image in the blockchain, or within this peer-to-peer network that is discussed, but it is comparing that to the same type of, structurally the later time, correct? Correct, Your Honor. And it compares those two images. Correct. Why isn't this then, the claims are directed to comparing one digital image with another? But it is much, much more than that, Your Honor. But we just agreed, I thought, that at the end of the day, what we have here, when we look at this method and process, we have a digital image, and it may be sophisticated, but it is basically a picture. Well, it is composed of, and it is put together between a lot of information that humans couldn't analyze, they can't analyze. This is not looking at everything that is within the human visible spectrum. That is why you need laser. That is why you need spectral imagers. That is why you need HD cameras. But counsel, you agreed that just reciting additional details is not alone sufficient to survive a 101 motion to dismiss, right? Well, I think conceptually, yes, Your Honor, that is true. I think this court and the Supreme Court have said that. But this is not a situation where that is all that is going on here. I think what is important here is this court, many, many times, has said, well, is the invention simply something that has been done traditionally by humans, and you are just applying it on a computer? That is not the case here. This has never traditionally been done by humans. Humans can't see these images. This is, again, bringing together LIDAR and spectral image and HD camera to do something that has never been done before. Your Honor, you don't need to hear me just say that. You don't need to hear my client just say that. You can hear the defendants or the appellees say that. We cite to a number of statements that both the Beers and BCG makes in their marketing talking about what a significant breakthrough this is. This is really great. I believe one of your arguments is that you contend that there were specific facts that could properly rule on something like a motion to dismiss. If so, what were those facts that you contended? I would point specifically to step two of Alice, Your Honor, the inventive concept. Here to determine whether something is an inventive concept, I think you would have needed to talk to the Beers. Why did you think this was an inventive concept? Why do you think this is such a breakthrough? How is this so different from anything else that has ever been done before? This truly, using the blockchain to follow the self-provenance of items had never been done before. It seems to me that's the underlying idea of blockchain. The underlying idea of blockchain, Your Honor, as I understand it, is to track digital transactions. The one we all know about is ... The word that you use is provenance. Self-provenance is, I think, the important part. That's what the blockchain is all about. The blockchain is ... At that, you're not claiming the blockchain, right? No, we're not claiming. My client did not invent the blockchain. I would agree with that. Did you ever plead in the operative complaint the facts that you believe would be relevant to this sort of analysis? All of the statements from De Beers and BCG about how groundbreaking this technology, about how this is an incredible platform for the industry, that's all in our complaint. We pulled those from the complaint. Could you point me to the key pages of the appendix that would reflect that? I don't have the complaint. I don't have the full appendix in front of me. I apologize for that. Counselor, you should come on and describe the ... I can ... Let me, Your Honor, because I'm pretty sure I have them written down. In June of 2020, Neil Ventura, De Beers Group's Executive Vice President of Strategy and Innovation, said that this is arguably our most ambitious undertaking. It combines a number of different technologies. It is a great platform. This is a journey that is new to us and is new to the industry. That's at appendix 344 and 346. There was an industry award, the Juilliard Industry Award, touting what an incredible breakthrough this was. That's at appendix 349. I think it's at 344 as well, where De Beers declared that the Tracer Project Team, Tracer being the allegedly infringing device, the Tracer Project Team has demonstrated that it can successfully track a diamond through the value chain. This is a significant breakthrough, quote from De Beers. While I understand that sometimes step two can be analyzed without facts, I'm not discrediting the fact that that has happened at times. Here, I think we have a very unique situation, where not only is it the inventor saying this, but the defendant is saying the same thing. This is the accused device that they are touting. The inventive concept is something very real here. This had never been done before. This is not simply take some information, put it on a computer so you can do it faster. Do you believe that the alleged invention claimed provides a technical solution to a technological problem? I do. Tell me what that is. It's obviously an incredibly technological solution. Again, using LIDARs, spectral imagers, and HD cameras. The ability to then take not only the diamond itself and confirm its signature over and over and over again, but to be able to then determine when diamonds are cut, when child stones are cut, and when these stones are polished. To be able to then determine, not only do we know what that child stone is, but we know from what original stone that child stone came from, and can then trace that back to a mine in Botswana, or a mine in South Africa, or what's very prevalent right now, mines from Russia. The US is trying to keep diamonds that originate from Russia from getting into the supply chain. I'm not sure if I'm totally following. What exactly is the technical solution to the technological problem? The technological problem is being able to have self-provenance of items. To be able to track an item based on the characteristics of the item. As opposed to, Your Honor, using QR codes. QR codes are applied to items. As opposed to RFIDs, those are applied to items. As opposed to etchings. Etchings were traditionally a way to follow diamonds through the supply chain. As soon as that etching gets polished off, or as soon as a child diamond is cut, that etching is no longer there. The RFID tag can be changed. It can be manipulated. The QR code, it can be changed. It can be manipulated. What we have here is the ability to determine self-provenance. The item itself is telling you, this is me. This is where I came from. That's the technological problem that had never been able to be solved before. Your Honor, I see that I'm in my time. You can continue and answer. Thank you, Judge. You have this problem that lots of industries have struggled with. The whole idea of counterfeiting, the whole idea of provenance, is a major problem. Now we have this incredibly, quite frankly, I would call it slick, technological solution of being able to have the item itself, self-provenance, to be able to have the item itself tell everyone, this is me. This is where I came from. These are my child. Children, essentially, for lack of a better term. My children's stones. This had never been done before. This was a problem that had been facing a lot of different industries. De Beers and PCG itself says, this is a problem that's been facing our industry. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, Brian Matsui for the appellees. The District Court correctly concluded that Wrighty's claims are ineligible under Section 101. At Alice Step 1, Mr. Wrighty's claims are directed to the abstract idea of collecting, analyzing, and recording data, such as a digital image here. And they recite no inventive concept at Step 2. They just recite the use of conventional technology without improving the technology itself. Now the reason why we know this is if we look at the claims themselves. Couldn't you say that it improves in the field of determining the provenance of goods? I mean, I think that you could say that this could be a good idea that might make it better for tracking diamonds. But the mere fact that you have a good idea that's an abstract idea doesn't make it patent eligible. That's what this Court has said. That you could have a good idea as to how to do an algorithm. I'm not saying that it's a good idea. But if it improves if it improves in the field of determining the provenance of goods. So I don't think that would take it out of the realm of abstract idea or make it, you know, a non-conventional use of technology. The point that this Court looks to is whether or not there's a technological problem. This is a technological solution to a technological problem. In other words, the claims need to improve the technology itself. And the claims here... That's not entirely correct. That's not the ALDOS test. It's step one. We're looking at whether the claims are directed to patent eligible subject matter, right? Certainly, Your Honor. And then after that, we're looking at the claim advance. And we're going to answer that question. We look at the patent as a whole. We look at the specification. Okay? I agree. So, if I was to look at this, at the claims and say that they're directed to the improvement of determining the provenance of merchandise in the marketplace, wouldn't that be a sufficient enough statement to take me out of the ineligible context? I don't think so. Not when you would say, well, how is it improving the provenance of these goods in the industry? And the way it's doing it is it's basically getting information about the good and then it's comparing that information about the good in a database like a ledger you would and then determining whether or not that good has been out there before. That's an abstract idea. I think that you could say that it's improving... A lot of claims that this court has found are ineligible could be described in such a way where it's improving the way to identify transactions or to identify individuals for transactions. And that even sounds more technological than what we have here, which is basically taking any sort of item and then saying that now we can figure out, take images of it and then compare the images to other images that were already in the blockchain and then recording... You heard me ask a friend on the other side whether my view of the claims being such that basically we're creating a digital image of an object and we're comparing that later to another digital image of the same object. Would that be a correct observation? I think that's probably the correct characterization of what's going on here. If we look at the claims themselves it says at appendix 27, if we look at claim 1, for example if we go a little bit past the where in clause, it says analyze an instance of a physical item using item analysis components. And then the next clause down says determine using the unique signature whether the instance of the physical item is previously recorded. What's your view of what the unique signature is? I think that it applies to sort of anything, is what they're talking about. So yes, it could be if you're talking about a diamond, it could be any flaws or imperfections that would allow you to determine whether or not this is the same diamond. I think that they mentioned that it could be paintings, you might be able to tell brush strokes. I guess it could be my watch. You could look at my watch and see how it is. But that's no different than any sort of other sort of ledger that you would do by sort of taking a look at an item and then recording it. But I think what's important here, just to take a step back is all these claims do is they just recite components and then a result. They basically say I think they pointed to claim 2 even though they hadn't made any arguments about claim 2 a spectral imager, a light source, a range scanner and all those things are just components that aren't actually saying that you're supposed to use them in any specific way. And that's what this court looks to when at step 1 There is a configuration of one of the processing devices. Do you see that? Which is where in one or more of the processing devices operate to configure the network node. Um Yeah Yes That's taking a conventional item and making it different I suppose. Well I think that's just using the computer is all that's doing and it's using the computer then to analyze I think that clause that you're pointing to Your Honor is right before the analyze paragraph and then the determine paragraph and the record. And so all it's taking there is using a computer and then using it to basically get the images and then compare them on the blockchain. And I think that's important here just to recognize that this is conceded that this is ordinary use of technology because when you look at the specification itself, it talks about these various components at appendix 21 column 8. And it talks about like at around line 32 a spectral imager and then it points down at the end of the paragraph such measurements are described in the paper and it cites a paper and then it goes laser projector and laser receiver at line 38 and then at the end of the paragraph it says such measurements are also described in the paper 3D imaging. So it's right there just talking about the ordinary use of technology to take these images what this court has found patents passing step 1 and step 2 they are improving technology in some way they might be in DDR they have a webpage that is an unconventional way in which people were searching the internet because it doesn't direct you to a new website when you have just the combination of equipment like you had in cases like content extraction which might be sort of interesting in the sense that it took a check figured out the data in the check and then could record data about the check to make financial... What is your response to opposing counsel's argument there needed to be some sort of discovery or factual development and that's why there shouldn't have been a grant of the motion to dismiss I think there's two problems with that argument the first is they can't point to any allegations at all or even the pages they pointed to are just basic broad statements about the tracer product but they don't tie any of those statements to actual elements that would be elements of the claim they would need to actually show that that was some sort of improvement of technology that gets me back to the fact that if you have an abstract idea if you come up with an idea and that's a good idea that doesn't mean that you're entitled to a patent on it if it's ineligible under section 101 and so that's why this court has said like in SAP something can be groundbreaking but you still aren't entitled to have a patent under section 101 on it and the second point I would make your honor on these additional allegations that they could conceivably make which I don't know what they would be the specification that I point to really sort of debunks any sort of notion that you could have allegations that would show that this would be an improvement upon technology itself because they're just reciting the ordinary conventional technology and they're telling you to use it in the way in these prior publications used it that they incorporated by reference I think one example to point to is the 3D imaging that they've talked about in the brief if we look at appendix 19 column 4 at line 38 it says the diamond is then reoriented in virtual space through similar techniques described in 3D sure I'm sorry your honor I apologize column 4 line 38 the diamond is then reoriented in virtual space and it talks about this technique and then at the end it says for some 3D graphical rendering techniques reference may be had to and then it cites a prior article that it incorporates by reference what would you summarize as to what the claims are directed to and then also what is the alleged inventive concept that they're claiming I mean I think that the claims are directed to collecting analyzing and recording information I mean I think that that's very clear just from the words of the claim and they don't provide any details about how you would do this in some sort of technologically improving manner your second question was I'm sorry your honor what if any alleged inventive concept are they claiming well I don't think there is any inventive concept they're pointing to because they're just talking about using this technology precisely the way it had been used in the past and when you look at this court's precedent where it's found an inventive concept like the cell spin case for example you talked about the unconventional use of technology where the connection between the camera and the mobile device allowed the camera then to be smaller because it didn't have to have all this network equipment that was loaded into it that's not something that you could find here when you're just talking about the conventional use of this ordinary technology and so I don't think that there's any and they certainly don't have anything that's in the claims here because the claims effectively just recite these components and results without going into specific steps that would need to be taken if the court has no further questions we would ask the court to affirm yes you have a little over two minutes thank you your honor I think counsel is doing exactly what this court has told parties not to do they're looking at every single individual element and saying hey you're just doing it the same way it used to be done but that's not the analysis that should be done the analysis is to look at the invention as a whole as a whole this is the use of sophisticated components in a non-conventional non-generic way that had never been done before I point to appendix 19 column 3 line approximately 37 through the rest of that paragraph at lines 52 there was a discussion about how the blockchain had not been able to really be used for digital or for physical assets this had never been done before because of the problems and the reasons I had stated earlier to be able to then make to accomplish that goal to be able to have the item self authenticate or self provenance itself to put that on the blockchain to track a physical asset was unique different had never been done before and to say that this patent doesn't provide details about how to get this done the inventive concept Judge Cunningham that you were talking about I point to and I will clearly admit some of this is way beyond my technological skill set but I point to appendix 24 and 25 starting at line column 13 line 40 all the way through column 15 line 37 that goes through excruciating detail of how this has to be done and so this patent this spec which the court never looked at never even talked about didn't even talk about the claims in its opinion does go through the sufficient detail to provide for an inventive concept and I see that my time is done Thank you